LILBURN CHANDLER, Appellant, *v.* STATE TAX COMMISSIONER, Appellee.

(*September* 22, 1938.)

HARRINGTON and RICHARDS, J. J., sitting.

*Lilburn Chandler,* appearing in person.

*George C. Hering, Jr.,* Deputy Attorney-General, for State Tax Commissioner.

Superior Court for New Castle County, No. 127, November Term, 1937.

RICHARDS, J., delivering the opinion of the Court:

The appellant bases his objections to the assessment on two grounds, first, that there is no provision under the law of 1929 for assessing the earnings of building and loan associations; and second, that even though the earnings of building and loan associations might be assessable, there was no time fixed by the law of 1929 for making the assessment.

The assessment in question was made under the provisions of the *Income Tax Law* of 1929, which seems to us to be broad enough to include income of this character. *Section* 2 (*a*) of said law as herein above quoted, provides for the levy, assessment and collection of an income tax, to apply to the net income of every taxable; *Section* 1 (*d*) in defining the meaning of the phrase "Net Income", includes "gains or profits and income derived and actually received into possession of, or credited subject to withdrawal by, a taxable from any source whatever". It is quite true that withdrawals from building and loan associations are not specifically mentioned, but the language used is certainly comprehensive enough to include funds derived from this source. The fact that the earnings from the stock were not paid to the stockholder each year, but were allowed to accumulate until his stock matured, as provided for by the by-laws, does not change its character, or take it out of the classification of income for the calendar year in which it was received.

The by-laws expressly provide that the object of the Association is the accumulation of a fund for the benefit of its members. The only manner by which said fund, or any portion thereof, can be obtained is by the withdrawal of a stockholder and the cancellation of his stock or the maturing thereof. If the earnings from the stock were paid to the stockholder each year, then the same should be taxed as income for the particular year in which it was paid; but not being received by him until the maturity of the stock how could it be taxed before that time?

In support of his contention that the *Act of* 1929 did not apply to the earnings from building and loan associations, the petitioner called attention to the *Act of* 1935, 40 *Del. Laws, c.* 11, *p.* 37, § 1 (d) which expressly provides for a tax on such earnings in this language: "Dividends and interest derived from maturity or cancellation of shares in Building and Loan Associations". The latter statute, by specifically mentioning earnings derived from maturity or in cancellation of shares in building and loan associations, makes it unlikely that this question will be raised again, but it takes nothing from the meaning of the statute passed in 1929 under which the deficiency assessment was made.

It may be said that it more clearly expresses the purpose of the original act.

The record shows that the petitioner agreed with the Tax Board that the sum of $3366.80, which he received during the taxable year 1933 by way of maturity of his stock in the association, was the correct amount. He now takes the position that there was no mistake in the actual figuring, but that the Commissioner made a mistake by figuring the tax on his shares from the time the series started, January 1, 1915, to the date of maturity, July 1, 1933. An inspection of the record clearly shows, that the aggregate amount of the earnings of his shares was $4440, that the sum of $9.66 per share on 20 shares, amounting to

$193.20, being the earnings on said shares prior to January 1, 1920, was deducted from said aggregate amount leaving the said sum of $3366.80.

In the absence of any showing that the above mentioned calculation is incorrect we must accept it as correct. The law expressly exempts earnings prior to January 1, 1920, and this exemption is allowed.

The appellant's second ground of objection, that the law fixes no time for making the assessment, also appears to us to be without merit. The law simply says,

"Beginning with the year 1930 there shall be levied, assessed, collected and paid annually by every taxable a tax on the net income of the preceding calendar year".

It then defines the meaning of the phrase "net income", but it does not attempt to say when the assessment of the tax shall be made. This objection could be made to the assessment of a tax upon all forms of income as well as that of building and loan associations. So far as the taxable is concerned, he certainly could not be compelled to pay an income tax on his shares in the Association until he received some income therefrom. Nothing was paid to him until July 1, 1933, consequently an income tax was assessable upon the amount which he received for the calendar year 1933.

The question involved in this case being solely a construction of the income tax law of this state, there are no authorities which are helpful. The case of *In re National Building, Loan & Provident Association,* 12 *Del. Ch.* 93, 107 *A.* 453, referred to by the Attorney for the Commissioner, does not consider the points raised in this case.

The finding of the Tax Board is hereby affirmed.